# No. 22-56209

IN THE
## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———

**YURIRIA DIAZ,**
*Plaintiff-Appellee,*

*v.*

**MACY'S WEST STORES, INC.
n/k/a MACY'S RETAIL HOLDINGS, LLC,**
*Defendant-Appellant.*

———

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
PHILIP S. GUTIERREZ, DISTRICT JUDGE • CASE NO. 8:19-CV-00303-PSG-MAA

———

## APPELLANT'S REPLY BRIEF

———

**HORVITZ & LEVY** LLP
PEDER K. BATALDEN
FELIX SHAFIR
3601 WEST OLIVE AVENUE, 8TH FLOOR
BURBANK, CALIFORNIA 91505-4681
(818) 995-0800

| | |
|---|---|
| **LITTLER MENDELSON** | **MACY'S, INC. LAW DEPARTMENT** |
| FERMIN LLAGUNO | CATHERINE E. SISON |
| P. DUSTIN BODAGHI | MICHAEL CHRISTMAN |
| 18565 JAMBOREE ROAD, SUITE 800 | 11477 OLDE CABIN ROAD, SUITE 400 |
| IRVINE, CALIFORNIA 92612 | ST. LOUIS, MISSOURI 63141 |
| (949) 705-3000 | (314) 342-6715 |

ATTORNEYS FOR DEFENDANT-APPELLANT
**MACY'S WEST STORES, INC. N/K/A MACY'S RETAIL HOLDINGS, LLC**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................ii

INTRODUCTION...........................................................................1

ARGUMENT ...............................................................................2

I.     The arbitration ruling here is appealable. .....................................2

II.    Reversal is necessary because the district court erred in
       holding the parties' arbitration agreement required the
       arbitration of the non-individual PAGA claims. ...........................9

       A.     The parties' intent to arbitrate only individual PAGA
              claims is established by the arbitration agreement's
              PAGA representative-action waiver. ...................................11

       B.     Other provisions in Diaz's arbitration agreement
              confirm the parties did not consent to arbitrate
              non-individual PAGA claims. ..............................................22

       C.     Even if the arbitration agreement were silent or
              ambiguous on representative arbitration, that would
              not authorize arbitration of non-individual PAGA
              claims.............................................................................28

III.   Pursuant to *Viking River* and the FAA, Diaz's non-individual
       PAGA claims must be dismissed. ..............................................33

CONCLUSION ............................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adolph v. Uber Techs., Inc.*,
___ P.3d ___, 2023 WL 4553702 (Cal. 2023) ...................................... 34

*Armendariz v. Foundation Health Psychcare Services, Inc.*,
6 P.3d 669 (Cal. 2000) ............................................................. 7

*Bonillas v. DSMI Staffing, LLC*,
No. E064503, 2016 WL 6302478
(Cal. Ct. App. Oct. 10, 2016) ............................................... 15

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
543 U.S. 157 (2004) ............................................................. 20

*Cortez v. Doty Bros. Equip. Co.*,
222 Cal.Rptr.3d 649 (Cal. Ct. App. 2017) ........................................ 25

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ............................................................. 3

*DIRECTV, Inc. v. Imburgia*,
577 U.S. 47 (2015) ......................................................... 11, 35

*Dominguez v. Sonesta Int'l Hotels Corp.*,
___ F.Supp.3d ___, 2023 WL 25707 (N.D. Cal. 2023) ........................ 15

*Gray v. Petrossian, Inc.*,
No. CV 17-6870 PSG (PJWx), 2017 WL 8792671
(C.D. Cal. Nov. 20, 2017) ............................................... 13, 14

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) .......................................................... 3, 7

*Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*,
304 F.3d 476 (5th Cir. 2002) ................................................. 6

*Hamilton v. Wal-Mart Stores, Inc.*,
  39 F.4th 575 (9th Cir. 2022) ...................................................... 18, 19

*Hermosillo v. Davey Tree Surgery Co.*,
  821 F.App'x 753 (9th Cir. 2020)................................................... 5, 8, 9

*Hernandez v. Mesa*,
  582 U.S. 548 (2017)................................................................................ 36

*Hernandez v. San Gabriel Temp. Staffing Servs., LLC*,
  No. 17-CV-05847-LHK, 2018 WL 1582914
  (N.D. Cal. Apr. 4, 2018) ..................................................................... 26

*Hernandez v. United States*,
  785 F.3d 117 (5th Cir. 2015)............................................................. 36

*Iskanian v. CLS Transp. Los Angeles, LLC*,
  327 P.3d 129 (Cal. 2014)................................................... 16, 17, 18, 20

*Jankey v. Lee*,
  290 P.3d 187 (Cal. 2012) .................................................................... 35

*Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*,
  713 F.2d 370 (8th Cir. 1983)............................................................. 35

*Johnson v. Consumerinfo.com, Inc.*,
  745 F.3d 1019 (9th Cir. 2014) ............................................................. 6

*Kinecta Alternative Fin. Sols., Inc. v. Superior Court*,
  140 Cal.Rptr.3d 347 (Cal. Ct. App. 2012)......................................... 25

*Lamps Plus, Inc. v. Varela*,
  139 S.Ct. 1407 (2019).............................................................. *passim*

*Langere v. Verizon Wireless Servs., LLC*,
  983 F.3d 1115 (9th Cir. 2020) ............................................................. 6

*Lewis v. Apple Am. Grp., LLC*,
  No. B275193, 2017 WL 3575187
  (Cal. Ct. App. Aug. 18, 2017) ............................................................ 30

iii

*Licon v. Wish-I-ah Skilled Nursing & Wellness Ctr. LLC*,
No. F070304, 2016 WL 3438842
(Cal. Ct. App. June 15, 2016)........................................................ 16, 20

*LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*,
957 F.3d 943 (9th Cir. 2020)........................................................ 27, 36

*Magadia v. Wal-Mart Assocs., Inc.*,
999 F.3d 668 (9th Cir. 2022)............................................................ 21

*Main Forest Prods. Council v. Cormier*,
51 F.4th 1 (1st Cir. 2022)................................................................. 35

*Martinez v. Carnival Corp.*,
744 F.3d 1240 (11th Cir. 2014).................................................... 3, 5, 6

*Maryland v. Wilson*,
519 U.S. 408 (1997)......................................................................... 36

*MediVas, LLC v. Marubeni Corp.*,
741 F.3d 4 (9th Cir. 2014)........................................................ 3, 4, 5, 6

*Microsoft Corp. v. Baker*,
582 U.S. 23 (2017)........................................................................ 2, 3

*Nelsen v. Legacy Partners Residential, Inc.*,
144 Cal.Rptr.3d 198 (Cal. Ct. App. 2012)...................................... 25

*Opalinski v. Robert Half Int'l, Inc.*,
677 F.App'x 738 (3d Cir. 2017)................................................... 25, 29

*Ortiz v. Hobby Lobby Stores, Inc.*,
52 F.Supp.3d 1070 (E.D. Cal. 2014)............................................... 14

*Oxford Health Plans LLC v. Sutter*,
569 U.S. 564 (2018)........................................................................ 30

*Parsittie v. Schneider Logistics, Inc.*,
No. CV 19-03981-MWF (AFMx), 2023 WL 2629869
(C.D. Cal. Feb. 8, 2023).............................................................. 14, 15

iv

*Perry v. Thomas,*
  482 U.S. 483 (1987) .............................................................. 35

*Piplack v. In-N-Out Burgers,*
  305 Cal.Rptr.3d 405 (Cal. Ct. App. 2023) ........................... 14

*Piplack v. In-N-Out Burgers,*
  530 P.3d 350 (Cal. 2023) ..................................................... 14

*Quevedo v. Macy's, Inc.,*
  798 F.Supp.2d 1122 (C.D. Cal. 2011) ........................... 16, 17

*Reed v. Fla. Metro. Univ., Inc.,*
  681 F.3d 630 (5th Cir. 2012) ................................................ 29

*Sakkab v. Luxottica Retail N. Am., Inc.,*
  803 F.3d 425 (9th Cir. 2015) .......................................... 18, 19

*Sanchez v. Elizondo,*
  878 F.3d 1216 (9th Cir. 2018) .............................................. 10

*Sandquist v. Lebo Auto., Inc.,*
  376 P.3d 506 (Cal. 2016) ..................................................... 26

*Seifu v. Lyft, Inc.,*
  306 Cal.Rptr.3d 641 (Cal. Ct. App. 2023) ................. 34, 35, 36

*Seifu v. Lyft, Inc.,*
  528 P.3d 18 (Cal. 2023) ....................................................... 34

*Sierra v. Oakley Sales Corp.,*
  637 F.App'x 368 (9th Cir. 2016) ........................................... 15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,*
  559 U.S. 662 (2010) ............................ 28, 29, 30, 31, 32, 33

*Sw. Elec. Power Co. v. Certain Underwriters
  at Lloyds of London,*
  772 F.3d 384 (5th Cir. 2014) ................................................. 6

*Teimouri v. Macy's, Inc.*,
   No. D060696, 2013 WL 2006815
   (Cal. Ct. App. May 14, 2013) ............................................................. 16

*United States v. Nev. Tax Comm'n*,
   439 F.2d 435 (9th Cir. 1971) ............................................................. 34

*Varela v. Lamps Plus, Inc.*,
   No. CV 16-577-DMG (KSx), 2016 WL 9110161
   (C.D. Cal. July 7, 2016) ..................................................................... 29

*Viking River Cruises, Inc. v. Moriana*,
   142 S.Ct. 1906 (2022) ................................................................. *passim*

*Viva! Int'l Voice for Animals v. Adidas Promotional Retail
   Operations, Inc.*,
   162 P.3d 569 (Cal. 2007) ................................................................... 35

*Volt Info. Scis, Inc. v. Bd. of Trs.*,
   489 U.S. 468 (1989) ........................................................................... 11

*Walker v. Scoobeez*,
   No. CV 18-06108 AB (RAOx), 2018 WL 11321932
   (C.D. Cal. Aug. 22, 2018) ................................................................. 26

*Wesson v. Staples the Off. Superstore, LLC*,
   283 Cal.Rptr.3d 846 (Cal. Ct. App. 2021) ........................................ 21

*Wolsey, Ltd. v. Foodmaker, Inc.*,
   144 F.3d 1205 (9th Cir. 1998) .......................................................... 11

## Statutes

9 U.S.C. § 16(a)(1)(B)...................................................................8, 9

9 U.S.C. § 16(a)(3) ...............................................2, 3, 5, 6, 8

28 U.S.C. § 1291 ...............................................................2, 3

California Civil Code
   § 1636 ...........................................................................11
   § 1641 ...........................................................................11
   § 1644 ...........................................................................11

## Miscellaneous

Joint Appendix, *Viking River Cruises, Inc. v. Moriana*,
   142 S.Ct. 1906 (2022) (No. 20-1573), 2022 WL 327145 ....................13

## APPELLANT'S REPLY BRIEF

## INTRODUCTION

Macy's motion to compel arbitration asked the district court to compel Diaz to arbitrate her individual claims under California's Private Attorneys General Act (PAGA) and to dismiss Diaz's non-individual (i.e., representative) PAGA claims. Diaz opposed the motion because, in her view, her arbitration agreement did "[n]ot [c]over PAGA [c]laims" at all. (2-ER-26 (emphasis omitted).)

The district court rejected both parties' positions and compelled arbitration of *both* the individual *and* non-individual PAGA claims. (1-ER-4, 6–9.) This ruling should be reversed because the district court erred in compelling representative arbitration of non-individual claims for multiple reasons. "[A]rbitration is a matter of consent" and "parties cannot be coerced into arbitrating a claim, issue, or dispute 'absent an affirmative "contractual basis for concluding that the part[ies] *agreed* to do so."'" *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1923 (2022) (citation omitted). Under the plain language of Diaz's agreement, the parties did *not* affirmatively consent to arbitrate the non-individual PAGA claims: the agreement includes a provision expressly barring

1

representative arbitration, numerous additional provisions manifest the parties' intent to arbitrate only individual disputes, and governing law forecloses representative arbitration even if the agreement were silent or ambiguous on that point. Finally, since the individual PAGA claims must proceed to arbitration while the non-individual PAGA claims cannot, those non-individual claims must be dismissed under *Viking River* and the Federal Arbitration Act (FAA).

## ARGUMENT

### I.    The arbitration ruling here is appealable.

We begin with appellate jurisdiction, since Diaz argues the district court's order is not appealable. (Red 8–12.) Diaz is wrong.

First, the order is appealable under 9 U.S.C. § 16(a)(3). As we explained in the opening brief, this statute permits appeals from final decisions with respect to arbitration; the order here is such a decision because it ended the case and left the district court with nothing more for it to do after compelling arbitration. (Blue 1–2.)

The term "final decisions" appears in other appealability statutes, like 28 U.S.C. § 1291, and the Supreme Court has held that "finality is to be given a practical rather than a technical construction." *Microsoft*

2

*Corp. v. Baker*, 582 U.S. 23, 37 (2017) (citation omitted). Section 1291 thus permits an appeal from a decision "that 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994) (citation omitted).

The Supreme Court adopted the same standard for appeals under § 16(a)(3). *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (quoting *Digital Equip.*, 511 U.S. at 867). "What matters" under this "functional test for finality" is "whether the case, in all practicality, is finished." *Martinez v. Carnival Corp.*, 744 F.3d 1240, 1243, 1245 (11th Cir. 2014).

That standard is satisfied here. The district court ordered all of Diaz's claims—individual and representative—to arbitration "in accordance with the arbitration agreement." (1-ER-2, 9.) The court denied a stay as moot and "close[d] the case as there are no remaining claims before the Court." (1-ER-9.)

Diaz disagrees. Relying on *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4 (9th Cir. 2014), she argues the order was not final because it "did

3

not expressly dismiss or stay the underlying claims." (Red 9–11.) But *MediVas* is inapposite.

In *MediVas*, a district court compelled arbitration as to many, but not all, claims and remanded the remaining claims to state court. 741 F.3d at 6. *MediVas* held the district court's order was not a final decision because, in context, the district court had *implicitly* stayed the case and did not end the litigation. *Id.* at 8–9. In its motion to compel, the defendant had asked for the arbitration of all claims and a stay of litigation pending arbitration; by granting the motion only as to certain claims, the district court signaled its intent to stay the arbitrable claims. *Id.* at 8. The defendant even waited to appeal until the arbitration ended and asserted in this Court that its appeal "was premature because the district court had not issued a final order . . . ." *Id.*

In contrast, Macy's never asked for, and the district court did not grant, a stay; to the contrary, it denied *Diaz*'s stay request and "close[d] the case as there [were] no remaining claims before the Court." (1-ER-9.) The district court's approach was consistent with the arbitration agreement. Article 3 provides that "the court shall dismiss the lawsuit

4

and require the claim to be resolved" through arbitration. (4-ER-593.)
The court did just that by granting Macy's motion "in accordance with
the arbitration agreement." (1-ER-9.) And Macy's did not wait to appeal
or concede the appeal is premature.[1]

That the district court did not use the word "dismiss" does not
transform its final decision into an interlocutory order. *MediVas* did
not require magic words, and the test for finality is a practical one.
*See Martinez*, 744 F.3d at 1244 (holding that "focus is not on the district
court's label, but rather on the effect of the district court's order").
"[T]here 'is no practical distinction between "dismiss" and "close" for
purposes of this appeal,' where 'the application of each word [of the
order] results in a termination on the merits, leaving the judgment-
rendering [sic] court with nothing more to do but execute the

---

[1]  For the same reasons, Diaz's reliance (Red 8–10) on *Hermosillo v.
Davey Tree Surgery Co.*, 821 F.App'x 753 (9th Cir. 2020), is misplaced.
The order in *Hermosillo* was not appealable under § 16(a)(3) because
the district court stayed the non-arbitrable PAGA claim pending
arbitration of other claims, ordered the parties to notify the court after
arbitration proceedings, and ordered the clerk to administratively close
the file. *Hermosillo*, 821 F.App'x at 755. That order, unlike here,
expressly contemplated further litigation in court.

5

judgment.'" *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 482 (5th Cir. 2002).

Thus, an order "that compels arbitration and dismisses *or closes* a case outright possesses finality and confers [appellate] jurisdiction." *Sw. Elec. Power Co. v. Certain Underwriters at Lloyds of London*, 772 F.3d 384, 387 (5th Cir. 2014) (emphasis added); *see Martinez*, 744 F.3d at 1243–44 (concluding that order compelling arbitration, dismissing other motions as moot, and closing case was appealable under § 16(a)(3), where court did not "dismiss" the arbitrable claims).

Besides, at most, *MediVas* created "a *rebuttable* presumption" that an order not explicitly dismissing underlying claims stays litigation. 741 F.3d at 9 (emphasis added). An order's finality is "determined by the context in which it was issued." *Id.* The contextual circumstances here differ from *MediVas* (*see supra* pp. 4–5) and rebut the presumption. *See, e.g.*, *Martinez*, 744 F.3d at 1243–44.[2]

---

[2] Diaz's other cited cases resolve issues unrelated to finality under § 16(a)(3) and are inapposite. *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1124 (9th Cir. 2020) (holding "the voluntary dismissal of claims following an order compelling arbitration does not create appellate jurisdiction"); *Johnson v. Consumerinfo.com, Inc.*, 745 F.3d 1019, 1021–23 (9th Cir. 2014) (holding order staying litigation and compelling arbitration could not be appealed as "collateral" order).

Diaz claims the district court "would retain jurisdiction to confirm or vacate" an arbitration award. (Red 10.) But she cites no authority, and the order foreclosed that prospect by "clos[ing] the case as there [were] no remaining claims before the Court." (1-ER-9.) In any event, while parties may ask district courts to enter judgments on arbitration awards, that "does not vitiate the finality" of an order compelling arbitration that ends litigation. *Green Tree*, 531 U.S. at 86.

Diaz also contends that, "if Macy's fails to pay the employer's share of arbitration fees or precludes plaintiff's right to discovery," Diaz would have "the right to come back to the district court." (Red 10–11.) Diaz relies on "*Armendariz v* [sic] *Foundation Health Phychare* [sic] *Services, Inc.*, 24 Cal.4th 83[, 6 P.3d 669] ([Cal. ]2000)." (Red 11.) But Diaz does not point to a specific page in *Armendariz* authorizing this, which is unsurprising because *Armendariz* does not support her "come back" to court point. Rather, *Armendariz* articulated public policy and unconscionability defenses to the initial enforcement of arbitration agreements. 6 P.3d at 674, 679–94.

Any possible doubts about the order's finality are relieved by *Lamps Plus, Inc. v. Varela*, 139 S.Ct. 1407, 1414 (2019), which held an

arbitration ruling was final under § 16(a)(3) where, as here, the district court ordered representative arbitration, rejected individual arbitration, and no claims remained in court. (Blue 2.)

Diaz distinguishes *Lamps Plus* because it involved class claims, not PAGA claims. (Red 9 n.4.) Even if that distinction were material—it is not (*infra* pp. 18–20, 30–33)—Diaz misstates *Lamps Plus*'s holding. There, the plaintiff never argued against finality, as Diaz does here. Rather, the plaintiff challenged the defendant's "standing to appeal" because the order "provided precisely the relief [the defendant] sought." *Lamps Plus*, 139 S.Ct. at 1414 (citation omitted). *Lamps Plus* rejected the standing argument, *id.*, which Diaz does not raise here (*see* Red 10 (arguing only that the order was not final)).

Second, the order here is separately appealable under 9 U.S.C. § 16(a)(1)(B) because it compelled non-individual PAGA claims to arbitration, thereby denying Macy's motion to compel arbitration of individual claims only. (Blue 2–3.) Diaz disagrees and points to *Hermosillo*'s non-binding majority opinion adopting a contrary view (Red 11–12), but the Supreme Court has yet to resolve this issue and *Hermosillo*'s dissenting opinion is more persuasive (Blue 3).

*Hermosillo*'s majority mistakenly believed that finding appellate jurisdiction under § 16(a)(1)(B) would require a merits analysis of defendant's right to individual arbitration. 821 F.App'x at 755–56. "That is incorrect. The jurisdictional question [under § 16(a)(1)(B)] turns not on whether [a defendant] is *entitled* to individual arbitration, but on whether it *sought* individual arbitration and instead *received* something fundamentally different." *Id.* at 758 (Feinerman, J., dissenting). That is the case here: Macy's seeks individual arbitration, but the court instead compelled representative arbitration. *See Lamps Plus*, 139 S.Ct. at 1414 (holding defendant asking for individual arbitration does not obtain relief sought when court orders representative arbitration).

## II. Reversal is necessary because the district court erred in holding the parties' arbitration agreement required the arbitration of the non-individual PAGA claims.

Below, Diaz argued her arbitration agreement "[d]oes [n]ot [c]over PAGA [c]laims" at all. (2-ER-26 (emphasis omitted).) On appeal, Diaz reverses course. She concedes the FAA governs her arbitration agreement and does not dispute her individual PAGA claims must be arbitrated. (Red 14, 32.) But she argues for the first time that "neither

9

the holding nor the disposition of *Viking River* applies" to Macy's motion
to compel arbitration "because the agreement to arbitrate [was]
missing" both "a 'wholesale waiver' of the right to bring a representative
PAGA action" and "an underlying agreement to arbitrate the PAGA
action individually." (Red 2.) According to Diaz, her agreement does "not
evince any intent of the parties to arbitrate only the 'individual' PAGA
claim[s]." (Red 1.) Diaz's new argument tracks the district court's
determination that the parties agreed to arbitrate non-individual PAGA
claims in addition to Diaz's individual claims. (1-ER-6–9.)

Diaz and the district court are wrong as to the non-individual
PAGA claims. The parties did not consent to arbitrate non-individual
claims; rather, the agreement's plain language establishes the parties'
mutual intent to arbitrate only individual claims.

"The FAA imposes certain rules of fundamental importance,
including the basic precept that arbitration 'is a matter of consent,
not coercion.'" *Sanchez v. Elizondo*, 878 F.3d 1216, 1221 (9th Cir. 2018)
(citation omitted). Thus, "a party can be forced to arbitrate only those
issues it specifically has agreed to submit to arbitration." *Viking River*,
142 S.Ct. at 1923 (citation omitted).

The FAA requires courts to enforce agreements to arbitrate in accordance with their terms. *Volt Info. Scis, Inc. v. Bd. of Trs.*, 489 U.S. 468, 478 (1989). Courts construing arbitration contracts must apply ordinary state-law principles, *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998), unless they are preempted by the FAA, *see DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 53–58 (2015). California contract law requires courts to give words their ordinary meaning, to read all provisions harmoniously, and to effectuate parties' mutual intentions. Cal. Civ. Code §§ 1636, 1641, 1644.

Here, the plain language of the parties' agreement manifests a mutual intention to arbitrate individual PAGA claims only; there is no affirmative contractual basis for concluding Diaz and Macy's consented to arbitrate non-individual PAGA claims. (Blue 13, 20–31.)

## A. The parties' intent to arbitrate only individual PAGA claims is established by the arbitration agreement's PAGA representative-action waiver.

Diaz emphasizes that article 2 of her arbitration agreement provides for the arbitration of "all-employment related legal disputes, controversies, or claims . . . ." (Red 6.) She argues this language permits arbitration of both individual and non-individual PAGA claims because

11

the agreement does not include a waiver of representative PAGA claims. (*See* Red 1–3, 14–30.) In this respect, her argument echoes the district court's ruling that "[t]he agreement's all-encompassing language coupled with a lack of language excluding representative PAGA claims leads the Court to find that all PAGA claims must be compelled to arbitration under the agreement." (1-ER-7.)

Diaz and the district court are mistaken. Article 11(f)(ii) of the agreement included a representative-action waiver foreclosing the arbitration of her non-individual PAGA claims:

> The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding. Nor shall the Arbitrator have the power to hear an arbitration as a class or collective action. (A class or collective action involves representative members of a large group, who claim to share a common interest, seeking relief on behalf of the group.)

(4-ER-598.) This provision is a PAGA representative-action waiver whose terms demonstrate that the parties sought to exclude representative arbitration (whether of non-individual PAGA claims or anything else). (Blue 9, 20–31.)

*Viking River* illustrates this point. The arbitration agreement there applied to "any dispute arising out of or relating" to the plaintiff's

12

employment. Joint Appendix at 86, *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906 (2022) (No. 20-1573), 2022 WL 327145, at *86. But the agreement also included a "Class Action Waiver" providing that the arbitration could not proceed as a "class, collective, representative or private attorney general action . . . ." *Id.* at *89–90 (emphasis omitted). Despite concluding this waiver was unenforceable and severable, *Viking River*, 142 S.Ct. at 1918–24, the Supreme Court held the defendant "was entitled to enforce the agreement insofar as it mandated arbitration of [the] individual PAGA claim" while the non-individual PAGA claims must instead be dismissed, *id.* at 1925.

Diaz argues *Viking River* is inapposite because, unlike the arbitration agreement there, her agreement—especially the waiver clause—never mentions the words "representative" or "PAGA." (*E.g.*, Red 2–3, 18–21, 25.)

But Diaz cites no authority requiring inclusion of the word "representative" or "PAGA."[3] Rather, post-*Viking River* case law—

---

[3] Diaz relies on *Gray v. Petrossian, Inc.*, No. CV 17-6870 PSG (PJWx), 2017 WL 8792671, at *1 (C.D. Cal. Nov. 20, 2017). (Red 15.) But *Gray* did not involve PAGA claims and did not address provisions waiving representative actions. 2017 WL 8792671, at *1–5. At any rate, *Gray*

including one of the cases Diaz cites (*see* Red 31)—refutes the erroneous premise that PAGA representative-action waivers foreclose representative arbitration of non-individual PAGA claims only where the waivers use the term "representative" or "PAGA." *See Piplack v. In-N-Out Burgers*, 305 Cal.Rptr.3d 405, 408, 410, 412–14 (Cal. Ct. App. 2023) (concluding non-individual PAGA claims were to proceed in court, where PAGA representative-action waiver never used the term "representative" or "PAGA"), *rev. granted*, 530 P.3d 350 (Cal. 2023); *Parsittie v. Schneider Logistics, Inc.*, No. CV 19-03981-MWF (AFMx), 2023 WL 2629869, at *3, *8–10 (C.D. Cal. Feb. 8, 2023) (rejecting plaintiff's contention that non-individual PAGA claims must be arbitrated because "waiver provision does not mention 'representative'

---

conflicts with Diaz's position. *Gray* emphasized that courts "must expansively interpret arbitration agreements . . . ." *Id.* at *2. But Diaz and the district court apply this half-heartedly: they broadly construe the provision covering employment-related disputes, while narrowly construing the collective-action waiver. *Gray* offers no support for this inconsistent approach. The collective-action waiver must be construed broadly too. *See Ortiz v. Hobby Lobby Stores, Inc.*, 52 F.Supp.3d 1070, 1083 (E.D. Cal. 2014) ("broad[ly]" construing collective-action waiver to encompass "representative PAGA claims").

claims" or "PAGA");[4] *Dominguez v. Sonesta Int'l Hotels Corp.*, ___ F.Supp.3d ___, 2023 WL 25707, at *2, *7–8 (N.D. Cal. 2023) (concluding non-individual PAGA claims should not be arbitrated where arbitration agreement waived "any class or collective claims" without using the words "representative" or "PAGA" (citation omitted)).

Indeed, even before *Viking River*, this Court and California appellate courts concluded that the type of collective-action waiver provision at issue here constituted a PAGA representative-action waiver. *See, e.g.*, *Sierra v. Oakley Sales Corp.*, 637 F.App'x 368, 369 & n.1 (9th Cir. 2016) (explaining that arbitration agreement included "a waiver of [the plaintiff's] right to bring a representative PAGA action" where agreement waived "'class or collective'" actions without mentioning PAGA); *Bonillas v. DSMI Staffing, LLC*, No. E064503, 2016 WL 6302478, at *2–3 (Cal. Ct. App. Oct. 10, 2016) (explaining that arbitration agreement included a PAGA representative-action waiver

---

[4] Diaz argues *Parsittie* rests on unique language in the agreement that any claims "must be submitted [to arbitration] on an individual basis only." (Red 29.) But that was not the court's only rationale: the court pointed out that the plaintiff's contention that waiver clauses must use the term "'representative'" to exclude non-individual PAGA claims from arbitration—the same argument Diaz makes here—was at odds with *Viking River*. *Parsittie*, 2023 WL 2629869, at *9–10.

where the agreement waived "class or collective action" without mentioning PAGA (citation omitted)); *Licon v. Wish-I-ah Skilled Nursing & Wellness Ctr. LLC*, No. F070304, 2016 WL 3438842, at *4, *7–8 (Cal. Ct. App. June 15, 2016) (same).[5]

In fact, federal and state courts have construed the very same waiver clause at issue here to be a PAGA representative-action waiver. (Blue 28–30 (citing *Teimouri v. Macy's, Inc.*, No. D060696, 2013 WL 2006815 (Cal. Ct. App. May 14, 2013), and *Quevedo v. Macy's, Inc.*, 798 F.Supp.2d 1122 (C.D. Cal. 2011)).)

Diaz is unable to distinguish *Quevedo* and *Teimouri* other than pointing out that they predate *Viking River* and *Iskanian v. CLS Transp. Los Angeles, LLC*, 327 P.3d 129 (Cal. 2014), *abrogated in part*

---

[5]   The district court stressed that article 2 set "additional limitations to claims that may be brought in arbitration" without mentioning representative PAGA claims. (1-ER-7.) This is irrelevant. Arbitration agreements need not use the word "representative" or "PAGA" to exclude non-individual PAGA claims. (*Supra* pp. 13–16.) Besides, article 2 describes which claims Diaz could pursue in arbitration relating to her *individual* employment with Macy's. (4-ER-592.) That article 2 requires certain individual claims to be "processed under a different procedure" (4-ER-593) does not lead to an inference the agreement authorizes representative arbitration. To the contrary, a different provision—article 11(f)(ii)—deals with representative claims, excluding them from arbitration, and courts have construed such a clause as a representative-action waiver. (*Supra* pp. 12–16.)

16

*by Viking River*, 142 S.Ct. at 1923–24, which she claims renders them "outdated" and "completely unpersuasive." (Red 30.) But, as discussed below, *Viking River* does not undermine the conclusion that the collective-action waiver here bars the arbitration of non-individual PAGA claims. (*Infra* pp. 18–20.) And *Iskanian* offers her no support since *Viking River* held, contrary to *Iskanian*, that the FAA requires PAGA actions to be broken up into constituent individual and non-individual claims pursuant to arbitration agreements. *See Viking River*, 142 S.Ct. at 1923–24.

Moreover, the age of the cases does not diminish our point. What matters is that two courts interpreting the plain language of the same arbitration agreement easily concluded its collective-action waiver encompassed representative PAGA claims. That these cases predate *Iskanian* and *Viking River* underscores their relevance given that *Viking River* restored the pre-*Iskanian* legal landscape by recognizing that PAGA claims could be divided into individual and non-individual claims and requiring employees to arbitrate individual PAGA claims.

Notably, since the 2011 *Quevedo* decision was close in time to when Diaz made her 2012 decision to agree to arbitrate her claims (*see*

17

4-ER-561–66), both the plain language of the agreement and the legal authority at the time informed Diaz that she was agreeing to arbitrate on an individual basis only any claims that might arise regarding her employment experience.

Diaz also suggests that construing collective-action waivers as PAGA representative-action waivers cannot be squared with *Viking River*, *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425 (9th Cir. 2015), and *Hamilton v. Wal-Mart Stores, Inc.*, 39 F.4th 575 (9th Cir. 2022). (*See, e.g.*, Red 21–27.) According to Diaz, this is because these cases described the differences between class actions and representative PAGA claims and noted that California law deems PAGA claims to be law enforcement actions brought by proxies for the state. (*See, e.g.*, Red 21–27; *see also, e.g.*, Red 30.)

This argument is misguided because *Viking River* and *Sakkab* largely derived their description of those differences and the nature of PAGA claims from then-existing California case law—specifically, *Iskanian* and its predecessors. *See Viking River*, 142 S.Ct. at 1919–20 & n.4; *Sakkab*, 803 F.3d at 429–31, 435–36; *see also Iskanian*, 327 P.3d at 146–52. And *Hamilton* largely reiterated what *Viking River* and

18

pre-*Viking River* California precedent said in comparing PAGA and class actions. *Hamilton*, 39 F.4th at 583–85, 588–89. In short, *Viking River*, *Sakkab*, and *Hamilton* broke no new ground in articulating those points. Accordingly, these decisions do not undermine courts' settled view—both before and after *Viking River*—that an arbitration agreement's waiver of class and collective actions amounts to a PAGA representative-action waiver.

In any event, Diaz overstates the extent to which courts have distinguished PAGA claims and class actions. *Viking River* notes that class actions allow "courts to use a representative plaintiff's individual claims as a basis to 'adjudicate claims of multiple parties at once, instead of in separate suits,'" and acknowledges that "PAGA actions also permit the adjudication of multiple claims in a single suit," even though their structure is different. 142 S.Ct. at 1920 (citation omitted). This is so because a "PAGA action asserting multiple code violations affecting a range of different employees does not constitute 'a single claim' in even the broadest possible sense," *id.* at 1919–20, and instead constitutes "a massive number of claims in a single-package suit," *id.* at 1924. It is therefore unsurprising that California case law applying the

*Iskanian* decision on which *Viking River* later relied acknowledges that "PAGA allegations present collective claims" and contractual provisions "exclud[ing] class and collective actions" from an arbitration agreement's scope do not prohibit the arbitration of a representative PAGA claim. *Licon*, 2016 WL 3438842, at *7–8.

Besides, *Viking River* addressed whether the FAA "preempts a rule of California law that invalidates contractual waivers of the right to assert representative claims" under PAGA. 142 S.Ct. at 1913. *Viking River* never said that clauses waiving class and collective actions are *not* representative-action waivers. Cases are not authority for propositions not considered. *See, e.g.*, *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004).

Moreover, article 11(f)(ii) of Diaz's agreement does more than deprive the arbitrator of the power to hear the arbitration as a class or collective action. The provision also prohibits the arbitrator from "consolidat[ing] claims of different Associates into one (1) proceeding." (4-ER-598.) Contrary to Diaz's contention (*see* Red 26), *Viking River* confirms that this prohibition on consolidation bars the arbitration of non-individual PAGA claims. As noted above, *Viking River* recognized

20

that such non-individual claims adjudicate "multiple claims in a single suit" and thereby involve "a massive number of claims in a single-package suit." 142 S.Ct. at 1920, 1924. Thus, by their very nature, non-individual PAGA claims necessarily consolidate multiple clams of different associates in a single proceeding. *See Wesson v. Staples the Off. Superstore, LLC*, 283 Cal.Rptr.3d 846, 859–60 (Cal. Ct. App. 2021) (explaining that representative PAGA actions "cover a vast number of employees, each of whom may have markedly different experiences relevant to the alleged violations"—including "disparate groups of employees" who have been subjected to "different kinds of violations"); *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 675–76 (9th Cir. 2022) (explaining that PAGA differs significantly from traditional qui tam statutes by implicating the interests of nonparties). This is precisely what the agreement's prohibition on consolidation precludes.

In sum, contrary to the views of Diaz and the district court, Diaz's arbitration agreement did not lack a PAGA representative-action waiver, nothing in *Viking River* or this Court's case law is to the contrary, and this Court should reverse the order compelling representative arbitration of Diaz's non-individual PAGA claims

because this waiver shows the parties did not intend for such arbitration.

**B.  Other provisions in Diaz's arbitration agreement confirm the parties did not consent to arbitrate non-individual PAGA claims.**

Diaz's agreement consistently refers to her in the singular form, limits the arbitral claims to those arising from Diaz's own employment, and sets forth procedures which plainly contemplate an arbitral hearing of a single employee's claims. This further refutes Diaz's contention that her agreement evinces no intent to arbitrate only individual PAGA claims.

Diaz's agreement is part of Macy's nationwide "Solutions InSTORE" early dispute resolution program. (4-ER-569–71, 591.) This program has four avenues (referred to as "Steps") designed to resolve an employee's employment-related disputes quickly and efficiently. (4-ER-585–88.) All four Steps are described in terms that contemplate an employee raising only individual claims.

For example, the program provides: "Steps 1 and 2 are available for any **disputes relating to your employment with the Company**. [¶] If **you** are not satisfied with the result at Step 2, and **you** believe

**your** situation involves legally protected rights, **you** can make a Request for Reconsideration (**Step 3**)." (4-ER-587 (first five emphases added). The program also states: "[if] for whatever reason, **your dispute** cannot be resolved at Step 3 and **you** wish to pursue it further . . . **[y]ou** can request Arbitration (Step 4).") (4-ER-587 (emphases added).) The plain language of these provisions underscores the parties' intent to resolve employment-related disputes on an individual basis.

The same is true of Step 4 governing arbitration. (*See, e.g.*, 4-ER-591–98.)

Article 2 of Step 4 explains that arbitration applies to all covered disputes "whether ***asserted by the Associate against the Company*** and/or against any employee, officer, director or alleged agent of the Company." (4-ER-592 (emphasis added).)

Article 3 provides: "**the Associate and the Company** agree to resolve through arbitration all claims described in or contemplated by Article 2 above." (4-ER-593 (emphasis added).) Article 3 specifies: "neither **the Associate nor the Company** can file a civil lawsuit in

23

court **against the other party** relating to such claims." (4-ER-593 (emphasis added).)

Article 6 explains how "**the Associate or Company**" must initiate arbitration. (4-ER-594 (emphasis added).)

Article 7 states that "[b]oth **the Company and the Associate** shall participate equally in the selection of an arbitrator to decide the arbitration," and articulates the procedures for the "**Company and the Associate**" to do so. (4-ER-594 (emphasis added).)

Article 8 provides that the "arbitration hearing shall be held at a location within fifty (50) miles of **the Associate's last place of employment with the Company**, unless the parties agree otherwise." (4-ER-595 (emphasis added).)

Article 9 gives "[b]oth **the Associate and the Company** . . . the right to be represented by an attorney," and states that "[i]f **the Associate** elects not to be represented by an attorney during the arbitration proceedings, the Company will not have an attorney present during the arbitration proceedings." (4-ER-595 (emphasis added).)

Article 10 provides for production of initial disclosure documents, including, specifically, "**the Associate's** 'PERSONNEL FILE.'" (4-ER-595–96 (emphasis added).)

Courts have repeatedly found that this type of language from Steps 1 through 4—terminology focused on *individual* arbitration obligations and rights—does not permit representative arbitration. *See, e.g.*, *Cortez v. Doty Bros. Equip. Co.*, 222 Cal.Rptr.3d 649, 661 (Cal. Ct. App. 2017) (holding arbitration agreement did not permit representative arbitration where it referred to the "dispute of an individual employee, not a group of employees"); *Opalinski v. Robert Half Int'l, Inc.*, 677 F.App'x 738, 742–43 (3d Cir. 2017) (holding that intent to allow representative arbitration could not be inferred where the agreement covered claims arising out of "the particular employee's employment, not any employee's employment"); *Nelsen v. Legacy Partners Residential, Inc.*, 144 Cal.Rptr.3d 198, 202, 210–11 (Cal. Ct. App. 2012) ("No language" in the agreement "evince[d] an intent to allow class arbitration" where agreement referred solely to employee and employer); *Kinecta Alternative Fin. Sols., Inc. v. Superior Court*, 140 Cal.Rptr.3d 347, 351 n.1, 356–57 (Cal. Ct. App. 2012) (disallowing

representative arbitration where agreement identified only two parties and made no reference to including other employees in arbitration), *disapproved on another ground in Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 523 n.9 (Cal. 2016); *accord, e.g.*, *Walker v. Scoobeez*, No. CV 18-06108 AB (RAOx), 2018 WL 11321932, at *3 (C.D. Cal. Aug. 22, 2018) (holding that agreement did not permit representative arbitration where it "repeatedly referr[ed] to Plaintiff in the singular" and made no reference to "other employees' claims or disputes"); *Hernandez v. San Gabriel Temp. Staffing Servs., LLC*, No. 17-CV-05847-LHK, 2018 WL 1582914, at *7 (N.D. Cal. Apr. 4, 2018) (holding that, where arbitration provision "compels to arbitration '[a]ny dispute that arises out of or relates to *Employee's employment by Company*,'" this demonstrates the provision "focus[es] exclusively on only two parties").

Diaz's arbitration agreement is comparable to these authorities. It shows the parties "clearly contemplate[d] and allow[ed] only for arbitration of Diaz's individual claims, expressly prohibiting the arbitration of any claims relating to other employees (or 'Associates,' as used in the parties arbitration agreement.)." (Blue 21.)

Diaz's brief ignores these provisions, tacitly conceding the ruling compelling arbitration of her non-individual claims must be reversed. *See LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 950 (9th Cir. 2020) ("Failure to respond meaningfully in an answering brief to an [appellant's] argument waives any point to the contrary.").

Diaz turns elsewhere, to a provision in the agreement vesting the arbitrator with authority to "grant any remedy or relief that would have been available to the parties" under applicable law. (Red 17; *see* 4-ER-601 (stating that "the Arbitrator shall have the same power and authority as would a judge to grant any relief").) According to Diaz, this provision gives the arbitrator the authority to award the same representative PAGA relief that a court could award. (Red 16–18.)

This argument is without merit. Diaz confuses the issue of whether claims may be arbitrated with the scope of relief for claims that are arbitrated. The arbitration agreement does not authorize the arbitrator to award any relief for non-arbitrable claims. To the contrary, Article 13 of the agreement specifies that the "Arbitrator's authority shall be limited to deciding the case submitted by the party bringing the arbitration," the prior provisions specify which claims can be

arbitrated, and, as explained earlier, the covered claims do not include non-individual PAGA claims. (4-ER-599.) Indeed, Article 11(f)(ii) strips the arbitrator of the power to hear an arbitration as a "class or collective action" and prohibits the arbitrator from "consolidat[ing] the claims of different Associates into one (1) proceeding." (4-ER-598; *see supra* pp. 12–22.) As such, the arbitrator lacks the power to award representative PAGA penalties.

**C.    Even if the arbitration agreement were silent or ambiguous on representative arbitration, that would not authorize arbitration of non-individual PAGA claims.**

Diaz and the district court contend the agreement is silent on representative arbitration, thereby authorizing it. (1-ER-6–7; Red 14–30.) Additionally, they contend that even if the agreement is ambiguous on this point, this ambiguity permits such arbitration. (1-ER-7–8; Red 30–31.) But neither silence nor ambiguity authorizes representative arbitration. (*See* Blue 27.)

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010), held that a court may not compel representative arbitration "when an arbitration agreement is 'silent' on the availability of such arbitration." *Lamps Plus*, 139 S.Ct. at 1412. *Lamps Plus* extended this no-inference-

28

from-silence rule to ambiguous agreements. *Id.* at 1415–17. Consequently, if Diaz's agreement were silent or ambiguous as to the availability of representative arbitration, that alone would foreclose the representative arbitration the district court ordered.

Diaz and the district court emphasized the breadth of the arbitration agreement, but that reliance is misplaced under *Stolt-Nielsen* and *Lamps Plus*. Those cases held that silence and ambiguity were insufficient to authorize representative arbitration even though both decisions involved agreements that included clauses broadly requiring arbitration of "any dispute" arising from certain circumstances, *Stolt-Nielsen*, 559 U.S. at 667, and "all claims or controversies" arising from the plaintiff's employment, *Varela v. Lamps Plus, Inc.*, No. CV 16-577-DMG (KSx), 2016 WL 9110161, at *1 (C.D. Cal. July 7, 2016). Under that precedent, the fact an arbitration agreement specifies which claims or disputes should proceed to arbitration "shows only the parties' general intent to arbitrate," not an intent to proceed with *representative* arbitration. *Opalinski*, 677 F.App'x at 742; *accord, e.g.*, *Reed v. Fla. Metro. Univ., Inc.*, 681 F.3d 630, 642–43 (5th Cir. 2012) (holding that, under *Stolt-Nielsen*, an "any dispute"

29

clause is "not a valid contractual basis upon which to conclude that the parties agreed to submit to class arbitration"), *abrogated on another ground by Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2018).

The district court distinguished *Stolt-Nielsen* and *Lamps Plus* as involving class arbitration, rather than the representative arbitration of non-individual PAGA claims. (1-ER-8.) Diaz echoes this distinction as to *Lamps Plus* (although she ignores *Stolt-Nielsen*). (Red 23–24, 27.) But this distinction cannot be reconciled with *Viking River*.

*Viking River* applied both *Stolt-Nielsen* and *Lamps Plus* to hold that the FAA preempts California law insofar as it precludes the arbitration of PAGA claims, 142 S.Ct. at 1924. This shows *Stolt-Nielsen* and *Lamps Plus* apply to PAGA claims. Even before *Viking River*, California law construed *Stolt-Nielsen* as applying to PAGA claims. *Lewis v. Apple Am. Grp., LLC*, No. B275193, 2017 WL 3575187, at *4 (Cal. Ct. App. Aug. 18, 2017) (applying *Stolt-Nielsen* to hold that "a representative PAGA action was not within the scope of arbitrable claims between the parties"). This Court should follow suit.

The Supreme Court's reasoning confirms the point. *Stolt-Nielsen* held that a party may not be compelled "to submit to class arbitration

unless there is a contractual basis for concluding that the party *agreed* to do so" because "arbitration is a matter of consent." 559 U.S. at 684. *Lamps Plus* likewise determined a party may not be compelled to class arbitration where an agreement is ambiguous as to the availability of such arbitration because "arbitration is strictly a matter of consent"—a conclusion that "follow[ed] directly" from "*Stolt-Nielsen*." 139 S.Ct. at 1415–17 (citation omitted).

While *Stolt-Nielsen* and *Lamps Plus* mentioned differences between bilateral arbitration and class actions, their holdings rest on "the foundational FAA principle that arbitration is a matter of consent." *Id.* at 1415–19 (citation omitted); *Stolt-Nielsen*, 559 U.S. at 684–87. So too for the arbitration of PAGA claims. *E.g.*, *Viking River*, 142 S.Ct. at 1923–24. Since the same rule of consent governs class actions and PAGA claims, it makes no difference that *Lamps Plus* and *Stolt-Nielsen* involved the former rather than the latter.

*Viking River* detailed differences between class actions and representative PAGA claims to decide whether the FAA preempted California's prohibition on the enforcement of waivers that foreclose all resolution of representative PAGA claims. 142 S.Ct. at 1913, 1918–23.

31

*Viking River* never said the differences between class and representative PAGA actions override foundational principles of consent, and cases are not authority for propositions not considered. (*Supra* p. 20.)

If anything, *Viking River* confirms that *Stolt-Nielsen* and *Lamps Plus* apply to representative PAGA claims. *Viking River* emphasized that "parties cannot be coerced into arbitrating a claim, issue, or dispute 'absent an affirmative "contractual basis for concluding that the party *agreed* to do so."'" 142 S.Ct. at 1924 (quoting *Lamps Plus*, 139 S.Ct. at 1416 (quoting *Stolt-Nielsen*, 563 U.S. at 684). Applying this principle, *Viking River* determined the FAA preempted California's judge-made rule allowing parties to arbitrate *one* employee's PAGA claim only by arbitrating *all* employees' PAGA claims together. *Id.* Quoting *Lamps Plus*, *Viking River* explained that this rule "unduly circumscribes the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate.'" *Id.* (quoting *Lamps Plus*, 139 S.Ct. at 1416). Any other approach would "violate[ ] the fundamental principle that 'arbitration is a matter of consent.'"

*Id.* (quoting *Stolt-Nielsen*, 559 U.S. at 684). The state-law PAGA rule violated this principle. *Id.*

Thus, far from holding *Stolt-Nielsen* and *Lamps Plus* inapplicable to PAGA claims, *Viking River* applied *Stolt-Nielsen* and *Lamps Plus*. Consent is king—the parties choose which disputes to arbitrate and the rules for doing so. Since this principle undergirds *Stolt-Nielsen*'s and *Lamps Plus*'s determination that silence and ambiguity are insufficient to authorize representative arbitration, *Viking River* must apply equally (beyond the class action context) to govern the availability of other types of representative arbitration (like the non-individual PAGA claims here). In sum, Diaz's arbitration agreement cannot be construed to authorize representative arbitration of non-individual PAGA claims even if it is silent or ambiguous as to its availability.

## III. Pursuant to *Viking River* and the FAA, Diaz's non-individual PAGA claims must be dismissed.

The discussion above shows why Diaz's non-individual claims may not be arbitrated. (*See* Blue 20–31.) As to what then should become of those non-individual claims, they must be dismissed as a matter of federal law. (Blue 31–32, 34–39.)

33

Macy's opening brief explained that *Viking River* imposes a federal rule of decision requiring, as a matter of federal law, the dismissal of non-individual PAGA claims where individual PAGA claims proceed to arbitration. (Blue 31–32.)

Diaz ignores this argument. Citing several California Court of Appeal cases, she contends *California* law does not require dismissal. (*See* Red 31–32.) But that is a different point. (*See* Blue 32–33.) With one exception—*Seifu v. Lyft, Inc.*, 306 Cal.Rptr.3d 641, 644, 647–50 (Cal. Ct. App. 2023), *rev. granted*, 528 P.3d 18 (Cal. 2023)—none of those cases considered whether *Viking River* required the dismissal of the non-individual PAGA claims as a matter of *federal* law. *See also Adolph v. Uber Techs., Inc.*, ___ P.3d ___, 2023 WL 4553702, at *1 (Cal. 2023) (adopting this *state* law rule, without considering whether *federal* law requires dismissal of non-individual PAGA claims). Only *Seifu* rejected this federal interpretation of *Viking River*, 306 Cal.Rptr.3d at 648, but *Seifu* was wrongly decided. *See United States v. Nev. Tax Comm'n*, 439 F.2d 435, 439 (9th Cir. 1971) (holding state court decisions on questions of federal law do not bind federal courts).

34

First, *Seifu* said *Viking River* "interpreted" California law. *Seifu*, 306 Cal.Rptr.3d at 648. But *Viking River* was engaged in preemption analysis, which involves a comparison of federal and state law. *See Jankey v. Lee*, 290 P.3d 187, 195 (Cal. 2012). When courts apply the FAA, they "must apply federal substantive law;" state law simply "provide[s] a helpful reference in formulating the federal rule of decision." *Johnson Controls, Inc. v. City of Cedar Rapids, Iowa*, 713 F.2d 370, 373 (8th Cir. 1983).

Second, *Seifu* thought no federal constitutional issue was involved in *Viking River*. Not so—*Viking River*'s dismissal rule is an FAA preemption holding, which arises from the supremacy clause. *Perry v. Thomas*, 482 U.S. 483, 491 & n.8 (1987); *see DIRECTV*, 577 U.S. at 53. This clause embodies a constitutional rule. *Main Forest Prods. Council v. Cormier*, 51 F.4th 1, 6 (1st Cir. 2022); *see Viva! Int'l Voice for Animals v. Adidas Promotional Retail Operations, Inc.*, 162 P.3d 569, 571 (Cal. 2007).

Third, *Seifu* relied on Justice Sotomayor's concurrence in *Viking River*, which suggested the majority opinion had construed state law. But Justice Sotomayor "join[ed] the Court's opinion in full," *Viking*

35

*River*, 142 S.Ct. at 1925 (Sotomayor, J., concurring), and the majority opinion announced a federal rule of decision, (Blue 31–32). "If we take Justice [Sotomayor] at [her] word—as we must—[s]he undoubtedly joined the majority opinion" and therefore the majority's analysis "controls." *Hernandez v. United States*, 785 F.3d 117, 124 (5th Cir. 2015) (Jones, J., concurring), *vacated sub nom. on another ground*, *Hernandez v. Mesa*, 582 U.S. 548, 554–55 (2017). And if there is a conflict between the majority and concurrence, the concurrence cannot prevail. *See Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997).

Separately, Macy's showed that even if the dispositional issue turned on the state rule (as *Seifu* holds), the FAA preempts that state rule and requires the dismissal of Diaz's non-individual claims. (Blue 34–39.)

Diaz ignores this federal preemption point and none of the cases she cites (including *Seifu*) address that point—a tacit concession that Macy's is correct. *See LN Mgmt., LLC*, 957 F.3d at 950.

## CONCLUSION

While the district court correctly compelled Diaz to arbitrate her individual PAGA claims, this Court should reverse on the merits the ruling compelling the arbitration of Diaz's non-individual PAGA claims. Diaz's arbitration agreement did not authorize representative arbitration of non-individual claims, and the district court should dismiss them as a matter of federal law and order only her individual PAGA claims to arbitration.

August 3, 2023

**HORVITZ & LEVY LLP**
  PEDER K. BATALDEN
  FELIX SHAFIR
**LITTLER MENDELSON**
  FERMIN LLAGUNO
  P. DUSTIN BODAGHI
**MACY'S, INC. LAW DEPARTMENT**
  CATHERINE E. SISON
  MICHAEL CHRISTMAN

By: _____ s/ Felix Shafir _____

Attorneys for Defendant-Appellant
**MACY'S WEST STORES, INC. n/k/a**
**MACY'S RETAIL HOLDINGS, LLC**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____22-56209_____

    I am the attorney or self-represented party.

    **This brief contains** __6,957__ **words,** including _____ words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

    I certify that this brief *(select only one)*:

☒ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    ☐ it is a joint brief submitted by separately represented parties.
    ☐ a party or parties are filing a single brief in response to multiple briefs.
    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____s/ Felix Shafir_____ **Date** ____August  3, 2023____
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                  *Rev. 12/01/22*